IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:11-CV-90-RLV-DSC

KIMBERLIE PHILLIPS,            )
                               )
        Plaintiff,             )
                               )
    v.                         )      **MEMORANDUM AND ORDER**
                               )
SHEETZ, INC., and              )
KELLY HOSTETLER,               )
                               )
        Defendants.            )
_____)

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. 6), filed July 12, 2011, and Plaintiff's Motion to Remand (Doc. 8), filed August 4, 2011. Because Plaintiff may have a colorable claim as to Defendant Hostetler, the Court stays decision on these motions pending Plaintiff's submission of an amended complaint.

**I. PROCEDURAL HISTORY**

Defendants removed this case on July 5, 2011, asserting that Defendant Hostetler, a North Carolina citizen, is not a proper defendant and should be disregarded pursuant to the fraudulent joinder doctrine. (Doc. 1 at 1–2.) Because Plaintiff and Defendant Sheetz are citizens of different states—North Carolina and Pennsylvania, respectively—and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, Defendants argue that the Court has original jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.

In her Complaint, filed in the General Court of Justice, Superior Court Division of Alexander County, North Carolina, Plaintiff asserts five claims: (1) wrongful, sexual-orientation-based termination in violation of N.C. Gen. Stat. § 143-422.2 ("NCEEPA"); (2) wrongful,

1

retaliative termination in response to Plaintiff's protests of sex-based discrimination; (3)
negligent infliction of emotional distress; (4) negligent retention and supervision; and (5)
maintaining a hostile work environment in violation of the NCEEPA. (Doc. 1-1 at 9–12.)
Defendants have moved to dismiss these claims on the basis of Plaintiff's failure to plead in
accordance with the requirements of Rule 8 as discussed in *Bell Atlantic Corp. v. Twombly*, 550
U.S. 544 (2007), *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and their progeny. Plaintiff has
responded with a Motion to Remand.

## II. FACTUAL BACKGROUND

This brief recitation of facts is presented in the light most favorable to Plaintiff. *See
Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In February 2009, Plaintiff, then a
Sheetz employee and store manager, was assigned to instruct Ms. Antoniou, a manager-trainee.
Soon after this assignment, Ms. Antoniou began to make explicit, sexual remarks to and requests
of Plaintiff. Plaintiff rejected Ms. Antoniou's advances, demanded that she cease making sexual
comments, and reported this behavior to her District Manager, Defendant Hostetler, per
company policy. Ms. Antoniou nonetheless persisted in her harassment. In May 2009, Defendant
Hostetler arranged to have Ms. Antoniou transferred to another store. In June 2009, Plaintiff was
suspended pending investigation into anonymous telephone complaints lodged against her.
Plaintiff believed the complaints to have been contrived by Ms. Antoniou and her friends, and so
informed Defendant Sheetz's Manager of Employee Relations. Defendant Hostetler was
assigned to investigate the allegations, and in July 2009, Plaintiff's employment was terminated
on Defendant Hostetler's recommendation.

## III. ANALYSIS

A.  Statement of a Plausible Claim

2

A motion filed per Rule 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), measured by whether it meets the standards stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted), *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). While a complaint need not contain detailed factual allegations, the courts require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555 (applying Rule 8).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The decisive standard is that the combined allegations, taken as true, must state a "plausible," not merely conceivable, case for relief. *Sepúlveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.) (citing *Iqbal*, 129 S. Ct. at 1950–51 (citations omitted)). To have facial plausibility—a standard that lies between the outer boundaries of a probability requirement and the mere possibility of unlawful conduct—the pleading must contain factual content that permits the court, using its "judicial experience and common sense," reasonably to infer the defendant's liability. *Id.*

Here, however, in addition to Defendants' Motion to Dismiss (Doc. 6), a Motion for Remand has been filed (Doc. 8). The jurisdictional decision may render moot the Motion to Dismiss. Therefore, the Court will stay decision on the Motion to Dismiss until the matter of removal, discussed below, has been appropriately resolved.

B. Appropriateness of Removal

Generally, a civil case brought in state court may be removed by a defendant to federal court if the suit originally could have been brought in federal court. 28 U.S.C. § 1441(a). A federal court has original diversity jurisdiction when there is complete diversity among the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. 28 U.S.C. § 1332(a)(1); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806). There is complete diversity "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). A defendant is "properly joined" if there is a "colorable" claim against that defendant. If there is neither a legal nor factual basis for possible recovery against a particular defendant, the court is to disregard that defendant's domicile for purposes of determining diversity. *Mayes v. Rapoport*, 198 F.3d 457, 460–61 (4th Cir. 1999) (discussing "fraudulent joinder").

In determining whether a diversity plaintiff has set forth in accordance with the requirements of state law a viable cause of action against an in-state defendant, the courts are not limited to the allegations of a well-pleaded complaint, but may consider any evidence made a part of the record on the Motion to Remand. *Arndt v. Extreme Motorcycles*, No. 1:07-302, 2007 WL 4570861, at *2 (W.D.N.C. Dec. 26, 2007).[1] Per North Carolina's rules of pleading, a plaintiff's factual allegations must cover all material elements of each cause of action. *Stanback*

---

[1] All parties presume the state pleading standards to apply, and they are right to do so. The Federal Rules of Civil Procedure apply to "a civil action *after* it is removed from state court." Fed. R. Civ. P. 81(c) (emphasis added). Here, removal itself is contested, and there is a vacuity of precedent supporting the proposition that federal pleading standards are to apply when considering a plaintiff's complaint under state law in this posture. *See, e.g., Copper Basin Fed. Credit Union v. Fiserv Solutions, Inc.*, No. 1:11-203, 2011 WL 4860043, at *3 (E.D. Tenn. Oct. 13, 2011) (looking to state law, including the state-law pleading standards, in determining whether a colorable claim exists).

*v. Stanback*, 297 N.C. 181, 204 (1979), *overruled on other grounds by Dickens v. Puryear*, 302 N.C. 437, 448 (1981). Although the North Carolina Rules of Civil Procedure are modeled after the federal rules, the state's specificity requirement is more demanding (at least before *Twombly* and *Iqbal* were decided). *Sutton v. Duke*, 176 S.E.2d 161, 164–65 (N.C. 1970).

However, because of federalism concerns, the Court is obligated strictly to construe removal jurisdiction, and if federal jurisdiction is doubtful, remand is necessary. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)). The removing party here bears the heavy burden of showing that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court[,]" *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (citation omitted); if even a slight possibility of the plaintiff's right to relief remains, the claim of fraudulent joinder is defeated, *Mayes*, 198 F.3d at 466.

Here, Plaintiff states that she is pursuing only one cause of action against Defendant Hostetler individually: a claim for the negligent infliction of emotional distress ("NIED") resulting from a failure "to take any steps to halt the sexual harassment that Plaintiff was suffering, in violation of her duty according to company policy and law."[2] (Doc. 9 at 4.) For this

---

[2] The Complaint, in which the plural "defendants" is used under all claims, seems to include Defendant Hostetler as to each claim. However, Defendants' Notice of Removal astutely notes the various difficulties Plaintiff would face in demonstrating such claims to be colorable. For example, Plaintiff's first and second claims rather clearly cannot succeed as against Defendant Hostetler because Defendant Hostetler, Plaintiff's managing supervisor, was not Plaintiff's "employer." *Sampson v. Leonard*, No. 4:10-121, 2011 WL 129634, at *3 (E.D.N.C. Jan. 12, 2011) ("Under North Carolina law, a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents (such as co-workers and supervisors).") (citations omitted); *see also Lowe v. Unifi, Inc.*, 292 F. Supp. 2d 773, 790 (M.D.N.C. 2003) ("North Carolina does not recognize tort claims under the NCEEPA for . . . wrongful discharge in retaliation for complaints of sexual harassment" or discriminatory employment practices.) (citation omitted). Plaintiff thus has appropriately narrowed the issues

5

claim to be colorable under the law of North Carolina, Plaintiff must allege that (1) Defendant Hostetler negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress, namely, a severe and disabling emotional or mental condition that may be diagnosed by trained professionals; and (3) the conduct did in fact cause Plaintiff severe emotional distress. *See Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990).

Much supervisory conduct has been deemed inherently "intentional," thus precluding the NIED tort. *See Mitchell v. Lydall, Inc.*, No. 93-1374, 1994 WL 38703, at *3 (4th Cir. Feb. 10, 1994) (per curiam); *Barbier v. Durham County Bd. Of Educ.*, 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002) (citation omitted); *Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004) (ruling on motion to dismiss) (citation omitted); *McMahon v. Synthron, Inc.*, No. 1:05-324, 2006 WL 149054, at *5 (W.D.N.C. Jan. 18, 2006) (ruling on motion to dismiss). An employee will not be permitted to avoid the rigors of the intentional emotional distress tort by relying on intentional, supervisory conduct as the basis for a negligence tort claim, which has a relatively lower standard. *See Thomas v. N. Telecom, Inc.*, 157 F. Supp. 2d 627, 638 (M.D.N.C. 2000) ("Compelling reasons exist for focusing on the nature of the conduct itself, whether it is committed intentionally or negligently. Otherwise, conduct that is not extreme or outrageous enough to satisfy the intentional infliction standard could, [given] the absence of the same conduct requirements for both causes of action, be actionable if negligently inflicted but not actionable if done intentionally.") (citations omitted).

This preclusion thus applies to Defendant Hostetler's decisions to have Ms. Antoniou

---

and pursues only her third claim as against Defendant Hostetler.

transferred to another store and to recommend Plaintiff's termination following her review of the internal complaints lodged against Plaintiff. However, Defendant Hostetler's *inaction* for approximately a three-month period is less clearly categorized as intentional. This inaction, which allowed Ms. Antoniou's harassment to continue unaddressed, may have been intentional or unintentional; there is no indication that Defendant Hostetler intended a particular harm to result from her inaction. Indeed, her inaction can just as easily be explained at this stage in the proceedings by a failure to prioritize properly, a recording error, or simple forgetfulness.

Defendants cite *Schult v. Int'l Bus. Machs. Corp.*, No. 5:02-357, 2003 WL 24046341 (E.D.N.C. Oct. 30, 2003), in support of their position that Plaintiff has not alleged negligent behavior, but rather a course of intentional discrimination and retaliation. *Schult*, however, entailed a challenge to the manner in which IBM handled its investigation of the plaintiffs in that case in light of an employee harassment claim. Such proactive investigation clearly constitutes intentional conduct and stands in stark contrast with Defendant Hostetler's delay in responding to Plaintiff's harassment claim, which may or may not have been intentional. Therefore, if Plaintiff has successfully made out a prima facie case of NIED, Defendant Hostetler may be liable for her possibly negligent conduct.

The NIED cause of action is otherwise simply a subspecies of negligence and requires proof of the same elements as any negligence claim. *See Ruark*, 395 S.E.2d at 97. Here, the duty to provide for a harassment-free workplace for employees was expressly created by the employer via company policy, which encouraged employees to contact "their Manager, Direct Manager, or Regional Manager, call the Sheetz Employee Line, or write the Manager of Employee

7

Relations."[3] (Doc. 1-1 at 7.) While the NCEEPA cannot be the basis of the private cause of action here, *see Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000),[4] Defendant Sheetz voluntarily assumed the duty to respond to employee complaints of sexual harassment. This duty was then delegated to Defendant Hostetler, who may then be jointly liable with the corporation. *See Strang v. Hollowell*, 387 S.E.2d 664, 666 (N.C. Ct. App. 1990) ("It is well settled that one is personally liable for all torts committed by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation.") (quoting *Palomino Mills, Inc. v. Davidson Mills Corp.*, 52 S.E.2d 915, 919 (N.C. 1949)); *see also Wachovia Bank & Trust Co. v. Southern Ry. Co.*, 183 S.E. 620, 622–23 (N.C. 1936). The potential for corporate liability, in addition to individual liability, will not shield Defendant Hostetler from individual liability; Plaintiff is merely provided a choice as to which party or parties to pursue in her NIED claim.

---

[3] Plaintiff argues that Defendant Hostetler bears some general, personal duty under state law to ensure that subordinates are free of sexual harassment in the workplace by virtue of her status as a supervising manager. (Doc. 11 at 3.) This Court will not create such a duty—which would essentially export into state law a farther-reaching adaptation of Title VII, 42 U.S.C. § 2000e *et seq.*, of which Plaintiff did not avail herself and under which supervisors are not individually liable, *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998)—on the grounds that the theme of sexual harassment is generally implicated by state public policy, *see Whitt v. Harris Teeter*, 598 S.E.2d 151, 155 (N.C. Ct. App. 2004). Additionally, as discussed in footnote four, *infra*, Plaintiff cannot use employer discharge obligations under the NCEEPA to satisfy in part the elements of her NIED claim.

[4] However, the NCEEPA does support common-law claims for wrongful discharge in violation of state public policy. *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 720–21 (4th Cir. 2003). While Plaintiff was eventually discharged, the discharge claim is rightly treated by Plaintiff in her Reply Brief as quite distinct from the NIED claim here discussed. (Doc. 11 at 5–6.) The discharge, which constitutes intentional conduct, as well as any NCEEPA-derived duties relating to discharge and the instant case, must be analytically detached from the underpinnings of the NIED claim. Otherwise, as noted above, the claim will be rendered untenable by the discharge's intentional nature.

Additionally, Plaintiff satisfactorily alleges that Defendant Hostetler, having borne the duty to respond properly to reports of sexual harassment, breached that duty by failing to promptly address the harassment claim and that said breach caused Plaintiff to endure additional exposure to the unrelenting source of harassment. *See Riley v. Debaer*, 547 S.E.2d 831, (N.C. Ct. App. 2001) (deeming an "allegation of ordinary negligence" to be adequate in predicating the first prong in a claim of NIED, thereby excluding the "extreme and outrageous" conduct requirement (citing *McAllister v. Ha*, 496 S.E.2d 577, 582–83 (N.C. 1998))). Plaintiff has further alleged that her emotional distress was the foreseeable result of Defendants' negligent conduct, in satisfaction of *Ruark*'s second prong. (Doc. 1-1 at 10.) However, with respect to the third element of her NIED claim, Plaintiff has not put forth any specific factual allegation as to her "severe emotional distress," making no mention of any mental or emotional disorder or condition. The facts provided and the language "[a]s a direct result of defendants' actions, plaintiff suffered emotional distress and anxiety" cannot establish the injury contemplated in *Ruark*. (Doc. 1-1 at 10); *see Farris v. Tubular Textile LLC*, No. 1:01-984, 2002 WL 1150724, at *4 (M.D.N.C. May 24, 2002). Given the unique posture of this case, for this and additional reasons discussed below, Plaintiff is given leave to amend her complaint.

Furthermore, the Court is troubled by the strong language found within Plaintiff's Complaint. Plaintiff therein accuses "Defendants" of engaging in "outrageous" conduct, undertaken "willfully, wantonly and with reckless disregard for plaintiff's rights." (Doc. 1-1 at 10–11.) While the Court has noted that Defendant Hostetler's delay may be deemed unintentional on the facts provided, using the language of intentional, rather than negligent, infliction of emotional distress, *Plaintiff has pleaded this conduct as intentional.* Although Plaintiff has swiftly drifted away from this position following Defendants' responsive research

9

and analysis, the inconsistencies between the Complaint and later briefs are disconcerting. The Court would deem the language of the Complaint to prevail, and as a result, Defendant Hostetler would thus be fraudulently joined. However, the Court believes a more equitable result would be obtained by granting Plaintiff leave to amend her Complaint.

Finally, given the lack of careful research and analysis that caused the Complaint to be imprecise both in expressing the nature and elements of the claims, and identifying to which parties each claim applies, Plaintiff's counsel shall not bill Plaintiff for the costs of preparing and submitting the amended complaint. The amended complaint is to be received by this Court by November 11, 2011.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff be granted leave to amend her Complaint by November 11, 2011. Pending receipt of this amended complaint, the Court will stay decision on Plaintiff's Motion to Remand (Doc. 8) and Defendants' Motion to Dismiss (Doc. 6).

Signed: October 31, 2011

Richard L. Voorhees
United States District Judge