### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CASE NO. 5:11-cv-00090-RLV-DSC

| | | |
|---|---|---|
| KIMBERLIE PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| SHEETZ, INC., and | ) | |
| KELLY HOSTETLER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendants' renewed Motion to Dismiss (Doc. 17) and Motion for Reconsideration (Doc. 13), and Plaintiff's Motion to Remand (Doc. 8) and Amended Complaint (Doc. 15). Having established that an employee is not permitted to avoid the rigors of the intentional emotional distress tort by relying on intentional, supervisory conduct as the basis for a negligence tort claim, and having further determined that Plaintiff failed to plead Defendant Hostetler's conduct as negligent, the Court previously stayed decision on these motions pending Plaintiff's submission of her Amended Complaint. (Doc. 12.)

However, Plaintiff's amendments do not free her Complaint of defects fatal to her claim of negligent infliction of emotional distress ("NIED"). Notably, Defendants have argued that company policy is an insufficient basis for establishing Defendant Hostetler's duty to provide for a harassment-free workplace for employees. Although the Court recognizes that company policies "represent some evidence of a reasonably prudent standard of care," such "voluntary written policies and procedures do not themselves establish a per se standard of due care." *Klassette by Klassette v. Mecklenburg Cnty. Area Mental Health, Mental Retardation & Substance Abuse Auth.*, 364 S.E.2d 179, 183 (N.C. Ct. App. 1988). The ready implication of

such a standard from company policies would serve only to discourage, indeed to penalize, voluntary assumption or self-imposition of standards of conduct, thereby increasing the risk of harm to employees or the public. *Hall v. Toreros, II, Inc.*, 626 S.E.2d 861, 867 (N.C. Ct. App. 2006). Accordingly, having previously found no alternative foundation for such a duty in this case, the Court shall dismiss Plaintiff's NIED claim against Defendant Hostetler. (Doc. 12 at 7–8.)

Defendant Hostetler having been dismissed from this case, Defendants' Motion to Dismiss may now be considered.

As regards her first claim for relief, wrongful discharge as sex discrimination, Plaintiff argues that because she endured sexual harassment from Ms. Antoniou, a manager-trainee whom Plaintiff once instructed, Defendants' subsequent termination of Plaintiff's employment violated the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2, as discrimination "because of . . . sex." (Doc. 21 at 10–17) (suggesting further that Ms. Hostetler's recommendation for discharge was motivated by a fear for her own job security in light of her prior inaction, rather than Plaintiff's sex). Although Ms. Antoniou's harassment was obviously motivated in part by Plaintiff's sex, Plaintiff has not satisfactorily alleged that the employer's decision to terminate Plaintiff's employment was motivated by her sex or that the employer otherwise made some affirmative demand of Plaintiff to violate public policy, such as acceding to the harassment. *Whitt v. Harris Teeter, Inc.*, 614 S.E.2d 531, 532 (N.C. 2008) (adopting the reasoning of dissenting opinion in the court below, which noted that a wrongful-discharge claim "require[s] some affirmative demand of an employee by the employer to violate public policy"); *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 169 (N.C. 1992) ("Although the definition of 'public policy' approved by this Court does not include a laundry list of what is or

is not 'injurious to the public or against the public good,' at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes."); *Ridenhour v. IBM Corp.*, 512 S.E.2d 774, 778 (N.C. Ct. App. 1999) ("Public policy is defined as 'the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good.' . . . There is no specific list of what actions constitute a violation of public policy. . . . However, wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer[']s request, . . . (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy . . . ."). This claim shall therefore be dismissed.

With respect to Plaintiff's second claim for relief, wrongful discharge on the basis of opposition to sex discrimination, Plaintiff argues that because she opposed sexual harassment from Ms. Antoniou, and because she was discharged in response to her complaints of sexual harassment, such discharge violated the NCEEPA. Although certain public-policy-based exceptions are recognized by North Carolina's courts, it remains the general rule that "an at-will employee in [North Carolina] may not maintain a claim for wrongful discharge." *Deerman v. Beverly Cal. Corp.*, 518 S.E.2d 804, 806 (N.C. Ct. App. 1999) (citation omitted). Presuming that Plaintiff "was terminated in retaliation for her complaints of gender discrimination, such termination does not violate any express policy of the state of North Carolina. Plaintiff does not provide any citations to applicable statutes or law stating otherwise." *Curran v. First Union Mortg. Corp.*, No. 5:95-975, 1997 WL 907909, at *1 (E.D.N.C. Mar. 24, 1997); *accord McNeil v. Scotland Cnty.*, 213 F. Supp. 2d 559, 570 (M.D.N.C. 2002) (citing *Cline v. Dahle*, No. 01-94, 2002 WL 857552, at *7 (N.C. Ct. App. May 7, 2002)). This claim shall also be dismissed.

Plaintiff having failed to establish the requisite duty of care, her NIED claim as against Defendant Sheetz shall likewise be dismissed.

Plaintiff's fourth claim for relief, for negligent retention and supervision, fails in part for the same reason. To establish such a claim in North Carolina, Plaintiff must allege (1) that an incompetent employee committed a tortious act resulting in injury to Plaintiff and (2) that, prior to the act, the employer knew or had reason to know of the employee's incompetency. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 250 (4th Cir. 2000) (citing *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 124 (N.C. Ct. App. 1986)). Defendant proffers the NIED and wrongful-discharge claims as the requisite "tortious acts." (Doc. 21 at 22–23.) Because these underlying claims have been dismissed, so must the negligent-retention-and-supervision claim be dismissed.

Finally, "Plaintiff has elected not to pursue her hostile work environment claim and will not challenge Defendant on that count." (Doc. 21 at 10 n.4.) Therefore, Plaintiff's fifth and final claim shall be dismissed.

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Reconsideration (Doc. 13) be **GRANTED**. Plaintiff's Motion to Remand (Doc. 8) is therefore **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' renewed Motion to Dismiss (Doc. 17) be **GRANTED**. Defendants' prior motion (Doc. 6) is **DENIED** as moot. Plaintiff's Amended Complaint is hereby **DISMISSED** with prejudice.

Signed: September 30, 2013

Richard L. Voorhees
United States District Judge